Scott Frei, *pro se*
Sid # 6180687
Snake River Correctional Institution
777 Stanton Blvd.
Ontario, OR 97914


UNITED STATES DISTRICT COURT
DISTRICT OF OREGON


| | |
|---|---|
| SCOTT FREI, formerly known as RICHARD W. SALMON, | Civil Case No. 6:23-cv-01572-IM |
| Plaintiff, | CIVIL RIGHTS COMPLAINT AND MEMORANDUM IN SUPPORT |
| v. | |
| Oregon Board of Parole and Post-Prison Supervision and / or its individual members: Michael Wu; Christine Herrman; Sid Thompson; Patty Cress, and other unknown members, in their official and / or unofficial capacities, | 42 U.S.C. § 1983 |
| Defendants. | |

COMES NOW the Plaintiff *in propria persona*, and respectfully pleads and alleges as follows:

## I. JURISDICTION AND VENUE

1.1     The allegations, assertions and claims contained herein are not the basis of any other action or

appeal in any court in the United States.

Page 1 of 7 42 U.S.C. § 1983 CIVIL RIGHTS COMPLAINT

1.2    The Plaintiff and the Defendants reside in the District of Oregon.

1.3    The events which are the basis of this action all occurred within the District of Oregon

1.4    This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1343(a)(3), as

plaintiff allege, pursuant 42 U.S.C § 1983, that defendants, under the color of state law, have deprived

plaintiff of his rights, privileges, and immunities secured by the United States Construction.  It has

supplemental jurisdiction over any and all state ancillary claims.

1.5    This Court has jurisdiction over each claim, and to grant such equitable relief as appropriate to

correct the wrong[s] done, under Section 2 of Article III of the United states Constitution.

1.6    Venue is proper in this district pursuant to 28 U.S.C. § 1343(a) and (b) as the defendant resides

in this district, and in this state, and a substantial part of the events and omissions giving rise to the

claims herein occurred in this district.

## II. DECLATORY AND INJUNCTIVE RELIEF,
## COMPENSATORY/NOMINAL,
## PUNITIVE or other EQUITABLE RELIEF

2.1    This Court has authority to grant declaratory relief pursuant to 28 U.S.C. § 2201 as an actual

controversy exist regarding the rights, privileges, and immunities to which the plaintiff is entitled to.

2.2    Moreover, pursuant to 28 U.S.C. § 2202, this Court has authority to grant injunctive and

necessary and proper relief.

2.3    The Eleventh Amendment does not bar a suit against a state official when that suit seeks

prospective injunctive relief

2.4    Title II of the Americans With Disabilities Act (ADA) validly abrogates state sovereign

immunity insofar as it creates a private cause of action for damages against a State agency.

2.5    The abrogation allows this court the authority to grant Compensatory/Nominal and / or Punitive

Awards for violations of plaintiff's constitutional rights.

### III. PARTIES TO CLAIMS 1 thru 6

3.1    Plaintiff Scott Frei, formerly known as Richard W. Salmon is presently being confined to the care and custody of the Oregon Department of Corrections (ODOC) and presently being housed at the Snake River Correctional Facility (SRCI).

3.2    Defendant the Oregon Board of Parole & Post-Prison Supervision (Board), located at 1321 Tandem Ave. N.E., Salem, Oregon 97301.

3.3    Defendant Michael Wu who was at the time of the alleged civil rights violation(s) an official member of the Oregon Board of Parole & Post-Prison Supervision (Board), located at 1321 Tandem Ave. N.E., Salem, Oregon 97301.

3.4    Defendant Christine Herrman who was at the time of the alleged civil rights violation(s) an official member of the Oregon Board of Parole & Post-Prison Supervision (Board), located at 1321 Tandem Ave. N.E., Salem, Oregon 97301.

3.5    Defendant Sid Thompson who was at the time of the alleged civil rights violation(s) an official member of the Oregon Board of Parole & Post-Prison Supervision (Board), located at 1321 Tandem Ave. N.E., Salem, Oregon 97301.

3.6    Defendant Patty Cress who was at the time of the alleged civil rights violation(s) an official member of the Oregon Board of Parole & Post-Prison Supervision (Board), located at 1321 Tandem Ave. N.E., Salem, Oregon 97301.

### IV. CLAIM 1

### FACTUAL ALLEGATIONS

4.1    I am a person with a disability recognized under 42 U.S.C. § 12132 Title II of the Americans with Disabilities Act of 1990 (ADA) and as such I am protected from being discriminated against due to my disability.

Page 3 of 7 42 U.S.C. § 1983 CIVIL RIGHTS COMPLAINT

4.2    The Defendant, the Oregon Board of Parole & Post-Prison Supervision (Board) is a public entity and as such is mandated to adhere to 42 U.S.C. § 12132 Title II of the Americans with Disabilities Act of 1990 (ADA).

4.3    On May 30, 2018 the Defendants in their official and / or unofficial capacities violated plaintiff's rights under the ADA when:

      i.    the Defendants failed to perform its obligatory duty to undertake a fact-specific investigation to gather from the disabled individual and qualified expert's information to determine what constitutes a reasonable accommodation.

      ii.    the Defendants failed to make reasonable accommodations for my disability by denying me the ability to participate in a government program (exit interview process) *i.e.* psychological evaluation.

      iii.    the Defendants by penalizing me for not participating in the psychological evaluation by deferred my parole release date the maximum of ten years.

## V. CLAIM 2

### FACTUAL ALLEGATIONS

5.1    The Defendants in their official and / or unofficial capacities in violation of the *ex-post facto* clause of Fourteenth Amendment of the United States Constitution did, by way of Board Action Form #17, on June 19, 2018, applied OAR 255-062-0016 (2010) to defer plaintiff's release.

## VI. CLAIM 3

### FACTUAL ALLEGATIONS

6.1    The Defendants in their official and / or unofficial capacities in violation of the *ex-post facto* clause of the United States Constitution did, by way of Board Action Form #17, on June 19, 2018, individually and/or together applied ORS 144.125 (2009), ORS 144.280, and OAR 255-062 (2010).

## VII. CLAIM 4

Page 4 of 7 42 U.S.C. § 1983 CIVIL RIGHTS COMPLAINT

## FACTUAL ALLEGATIONS

7.1     The Defendants in their official and / or unofficial capacities in violation of the *ex-post facto*

clause of the United States Constitution did, by way of Board Action Form #17, on June 19, 2018, at

plaintiff's parole hearing applied OAR 255-062-0006(1) (2010).

## VIII. CLAIM 5

### FACTUAL ALLEGATIONS

8.1     The Defendants in their official and / or unofficial capacities in violation of the Fifth, and/or

Eighth, and/or Fourteenth Amendment(s) of the United States Constitution did, by way of Board Action

Form #17, wrongfully compelled plaintiff to be examined by a psychiatrist or psychologist utilizing the

authority of ORS 144.223.

## IX. CLAIM 6

### FACTUAL ALLEGATIONS

9.1     The Defendants in their official and / or unofficial capacities in violation Fourteenth Amendments

to the United States Constitution is placing an undo financial burden upon indigent plaintiff.

## X. PRAYER FOR RELIEF FOR CLAIM's 1 thru 6

WHEREFORE, plaintiff seeks and prays that he be awarded:

10.1     Declaratory judgment that defendant violated the United States Constitution.

10.2     Injunctive relief ordering defendant to cease violating the laws and constitution of the United

States.

10.3     Compensatory and punitive damages for violations of plaintiff's constitutional rights.

10.4     For such equitable relief as appropriate to correct the wrong[s] done.

10.5     For such other and different relief, the court deems just and appropriate.

10.6     Or set over for trial.

## XI.  EQUITABLE TOLLING

11.1  Date the Board violated Title II of the Americans With Disabilities Act (ADA): May 30, 2018

11.2   Date the Board violated the *ex-post facto* clause of Fourteenth Amendment of the United States Constitution with issuance of the Board Action Form #17: June 19, 2018

11.3   Date Administrative review was filed notifying the Board of its violations of the ADA, and *ex-post facto* clauses: August 10, 2018

11.4   Date the Administrative Review Response #10 was filed:  August 22, 2018

11.5   State Remedies:

11.6   Oregon Court of Appeals:  Case No. A169077, *Salmon v. Bd. of Parole & Post-Prison Supervision,* 314 Or. App. 879, (2021), Affirmed.

11.7   Oregon State Supreme Court: Case No. S069111, *Salmon v. Bd. of Parole & Post-Prison Supervision,* 369 Or. 785 (2022), Petition for Review Denied.

11.8   Appellate Judgment Effective Date: July 13, 2022

## XII. PREVIOUS 42 U.S.C § 1983 ACTIONS

**First Action**

12.1   Approximate date of filing: 20th day of November, 2019

12.2   Parties to the previous lawsuit:

12.3   Plaintiff: Richard W. Salmon

12.4   Defendant:  Marcia G. Ventura, Statewide Inmate ADA Coordinator.

12.5   Court: United States District Court District Of Oregon

12.6   Docket Number: 2:19-cv-01878-AC

12.7   Name of judge to whom case was assigned: John V. Acosta

12.8   Disposition: dismissed

**Second Action**

Page 6 of 7 42 U.S.C. § 1983 CIVIL RIGHTS COMPLAINT

12.9    Parties to the previous lawsuit:

12.10   Plaintiff: Richard W. Salmon

12.11   Defendant(s):  Collette Peters, Director of The Oregon Department Of Corrections; Brad Cain, Superintendent SRCI; Judy Gilmore, Assistant Superintendent SRCI; D. McQueen, Correctional Officer SRCI; J. Claus, Mailroom SRCI; Mark Nooth, Institutions Administrator

12.12   Court: United States District Court District Of Oregon

12.13   Docket Number: 2:20-cv-01917-MO

12.14   Name of judge to whom case was assigned: Michael W. Mosman

12.15   Disposition: Settlement in favor of Plaintiff

**WHEREFORE**, Plaintiff prays that the Court will grant such relief to which he or she may be entitled in this federal petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254 by a person in state custody.

**DECLARATION UNDER PENALTY OF PERJURY**

I declare (or certify, verify, or state) under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

_10-26-23_                    _Scott Frei_
Date                                Signature of Plaintiff

Scott Frei, *pro se*
Sid # 6180687
Snake River Correctional Institution
777 Stanton Blvd.
Ontario, OR 97914

## UNITED STATES DISTRICT COURT

## DISTRICT OF OREGON

| | |
|---|---|
| SCOTT FREI formerly known as<br>RICHARD W. SALMON,<br><br>    Plaintiff,<br><br>    v.<br><br>Oregon Board of Parole and Post-Prison<br>Supervision and / or its individual members:<br>Michael Wu;<br>Christine Herrman;<br>Sid Thompson;<br>Patty Cress,<br>and other unknown members,<br>in their official and / or unofficial capacities,<br><br>            Defendants. | Civil Case No._____<br><br><br>MEMORANDUM IN SUPPORT OF<br>CIVIL RIGHTS COMPLAINT<br><br>42 U.S.C. § 1983 |

**INTRODUCTION:**

Plaintiff [1] was convicted of murder in 1986 and sentence to life in prison.  On

January 18, 2018, in anticipation of his upcoming Exit Interview Hearing, plaintiff notified the

Oregon Board of Parole & Post-Prison Supervision (the Board) that under Title II of the

Americans with Disabilities Act (ADA) he has a recognized disability (Generalized Anxiety

Disorder), and under the ADA did make a request for reasonable accommodations asking the

Board to modify its policy by performing the Board ordered psychological evaluation at the

---

[1]    Plaintiff, on 12/22/22, changed his legal from Richard William Salmon to "Scott Frei".

Page 1 of 16 - MEMORANDUM IN SUPPORT OF CIVIL RIGHTS COMPLAINT

Snake River Correctional Institution located in Ontario Oregon where plaintiff is being confined instead of the required transportation to Salem Oregon.

The Board refused to provide the requested accommodations on the grounds that the anxiety disorder did not make him unable to travel.

Plaintiff notified the Board that once the Board does make the requested accommodations under the ADA, plaintiff will then participate in the psychological evaluation.

The Board, to punish me for informing them that only when the requested accommodations are made would I participate in the psychological evaluation, did defer my release date to the maximum ten years knowing that on no occasion will it make any accommodations required under the ADA[2].

## CLAIM 1

Title II of the Americans with Disabilities Act provides:

"Subject to the provisions of this subchapter, no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity."

42 U.S.C.A. § 12132,


and,

28 C.F.R. § 35.130(b)(7) provides:

A public entity shall make reasonable [3 ] modifications in policies, practices, or procedures *when the modifications are necessary to avoid discrimination on the*

---

[2] The Board had the discretion of deferring my release date at intervals of two years but not to exceed ten years.

[3]    Whether a particular modification is "reasonable" depends on the effectiveness of the modification in light of the disability and the cost to the public entity that would implement it. S*taron v. McDonald's Corp.*, 51 f3d 353, 356 (2d Cir 1995).

*basis of disability*, unless the public entity can demonstrate that making the
modifications would fundamentally alter the nature of the service, program, or
activity.

(Emphasis added).

The ADA, thus prohibits a public entity from discriminating against a qualified
individual with a disability on the basis of the disability. must make reasonable accommodations
to its policies when necessary to avoid discrimination on the basis of a disability.  State parole
boards fall within the statutory definition of a "public entity" under 42 U.S.C.A. § 12132.[4]
*Thompson v. Davis*, 295 F.3d 890,898 (9th Cir. 2002).

The plain language of Title II of the (ADA) extends its anti-discrimination guarantees to
the parole context. Title II of the ADA provides:  Subject to the provisions of this subchapter, no
qualified individual with a disability shall, by reason of such disability, be excluded from
participation in or be denied the benefits of the services, programs, or activities of a public entity,
or be subjected to discrimination by any such entity. 42 U.S.C. 12132.

"Like state prisons, state parole boards "fall squarely within the statutory definition of 'public
entity,' which includes 'any department, agency, special purpose district, or other instrumentality
of a State or States or local government.'" *Pennsylvania Dept. Correction v. Yeskey*, 524 U.S.
206, 118 S.Ct. 1952, at 1954-55, 141 L.Ed.2d 215 (1998) (quoting 42 U.S.C. 12131(1)(B)).

---

[4]   42 U.S.C.A. § 12131(1) provides, in part:

"The term 'public entity' means--

"**(A)** any State or local government; [and]
"**(B)** any department, agency, special purpose district, or other instrumentality of a State or
States or local government[.]

The ADA does not require only those accommodations that are necessary to prevent a disabled person from being completely excluded from participating in the service, program, or activity. Public accommodations must start by considering how their facilities are used by non-disabled guests and then take reasonable steps to provide disabled guests with a like experience. *See Spector v. Norwegian Cruise Line Ltd.,* 545 U.S. 119, 128–29, 125 S.Ct. 2169, 162 L.Ed.2d 97 (2005). Discrimination occurs, for this purpose, when a disabled person is deprived of a "like experience" as a result of their disability. A public entity must provide a reasonable accommodation whenever necessary "*to avoid discrimination*[.]" C.F.R. § 35.130(b)(7) (emphasis added).

To determine whether an accommodation is "necessary" in the context of a public accommodation under Title III of the ADA, courts use a "like experience" standard: public accommodations must consider how their facilities are used by nondisabled guest and then do whatever is reasonable and necessary to provide disabled guest with a "like experience". The same hold for public entities. *See People First of Alabama. v. Merrill,* 467 F.Supp.3d 1179, 1215 n 32 (N.D. ALA. 2020) (explaining that courts have read the requirements of Title II and Title III as being consistent with each other:

> The House Committee on Education and Labor indicated that Title II's prohibitions are to be "identical to those set out in the applicable provisions of titles I and III of this legislation." H.R.Rep. No. 101–485(II), at 84 (1990), reprinted in 1990 U.S.C.C.A.N. 303, 367. More specifically, the House Report on the ADA states that the prohibitions of discrimination on the basis of association from Titles I and III should be incorporated in the regulations implementing Title II. *Id.* ; H.R.Rep. No. 485(III), at 51 (1990), *reprinted in* 1990 U.S.C.C.A.N. 445, 474; *see also Kinney v. Yerusalim* , 9 F.3d 1067, 1073 n.6 (3d Cir. 1993) (legislative history indicates that Titles II and III are to be read consistently).)

To avoid discrimination the public entity must make the services, programs, or activity equally as valuable to and no more burdensome for the disabled person than for someone else. This means providing the evaluation at SRCI, where I could undergo the evaluation in conditions

comparable to those enjoyed by nondisabled inmates, *i.e.*, without the unfair burden of anxiety due to my disability. I did not have to be unable to travel to Salem for the accommodation to be necessary. I only had to show that the result of my disability, traveling to Salem for the evaluation would have been more burdensome for me than for an inmate without my disability.

Where Title II applies, an entity must give "primary consideration" to the kind of accommodation requested by a person with a disability. Giving primary consideration means that a Title II entity must "honor the person's choice, unless it can demonstrate that another equally effective means of accommodation is available, or that the use of the means chosen would result in a fundamental alteration or in an undue burden." U.S. Dep't of Justice, Civil Rights Div., Disability Rights Section, ADA Requirements.

The ADA further requires that a public entity has an obligatory duty to undertake a fact-specific investigation to gather from the disabled individual and qualified expert's information to determine what constitutes a reasonable accommodation. When the plaintiff has alerted the public entity to his need for accommodation, the public entity has a "well settled" duty to "undertake a fact-specific investigation to determine what constitutes a reasonable accommodation." *Duvall v. Cnty. of Kitsap, 260 F.3d 1124, 1135 (9th Cir. 2001*. This duty requires the public entity "to gather sufficient information from the [disabled individual] and qualified experts as needed to determine what accommodations are necessary." *Id*. (quoting *Wong v. Regents of the Univ. of Cal*., 192 F.3d 807, 818 (9th Cir. 1999)) (alteration in original).

## CLAIM 2

The United States Supreme Court has held that "The Constitution forbids the passage of *ex-post facto* laws, a category that includes '[e]very law that changes the punishment, and inflicts a greater punishment, than the law annexed to the crime, when committed'." *Peugh v. United*

Page 5 of 16 - MEMORANDUM IN SUPPORT OF CIVIL RIGHTS COMPLAINT

*States*, 133 S.Ct. 2072, 186 L.Ed.2d 84, 81 USLW 4372 (2013) (citing) *Calder v. Bull*, 3 U.S. 386, Dall. 386, 390, 1 L.Ed. 648 (1798) (emphasis deleted).

Under the *Ex-post facto* clause of Fourteenth Amendment of the United States Constitution plaintiff has a right to be free from Administrative Rules and /or Statutes which changes the punishment and inflicts a greater punishment, than the Administrative Rules and /or Statutes annexed to the crime, when committed. A change in Oregon's parole regulations can create a substantial — rather than attenuated or speculative — risk of increasing a prisoner's incarceration, and therefore violating the *Ex-Post Facto* Clause. *Himes v. Thompson*, 336 F.3d 848, 856 (9th Cir. 2003).

Plaintiff's committed offense of Murder occurred in 1983 (ORS 163.115 (1981)). The defendants on June 19, 2018, through the Oregon Revised Statues (ORS) 163.115 (2009) applied to plaintiff Oregon Administrative Rule (OAR) 255-062-0016 (2010). This rule is reliant upon the statutory authority of which in this case does not apply to plaintiff or the changes in the language of the statutory authority create an *ex-post facto* violation. Specifically OAR 255-062-0016 (2010)'s reliance upon the newly written mandatory language within the statutory authority of ORS 163.115 (2009).[5],[6]

A change in law that increases the mandatory minimum sentence attached to a crime increases the measure of punishment. *Lindsey v. State of Washington*, 301 U.S. 397, 57 S.Ct.

---

[5]   ORS 163.115 (1981) and 163.115 (2009) describe the same offense, the sentences are not entirely the same. Both the 1981 and the have the same life imprisonment component, but, the 1981 version does not have the mandatory minimum which was added in 2009.

[6]   A change in law that increases the mandatory minimum sentence attached to a crime increases the measure of punishment even if a plaintiff cannot show that he would have received a more lenient sentence under the old scheme. *Lindsey v. State of Washington*, 301 U.S. 397, 57 S.Ct. 797, 81 L.Ed. 1182 (1937).

797, 81 L.Ed. 1182 (1937).

Oregon's Board of Parole "through its rules governing release dates" affects "the amount of freedom or punishment that a prisoner in fact receives." *Williams v. Bd. of Parole,* 98 Or.App. 716, 780 P.2d 793, 795 (1989) (citation omitted). So recognizing, Oregon courts have held that Oregon Board of Parole regulations are properly subject to ex post facto analysis, *see id.,* as have we, *see Flemming v. Bd. of Parole,* 998 F.2d 721, 725–27 (9th Cir.1993). *Himes v. Thompson*, 336 F.3d 848 (9th Cir. 2003).

Under the applicable *ex post facto* analysis, the Defendant's reliance upon ORS 163.115 (2009) as the controlling authority, of OAR 255-062-0016 (2010) is therefore invalid as applied to Plaintiff (fruit of the poisonous tree).

### CLAIM 3

The offense which Plaintiff was convicted of occurred in 1983 where the applicable Statute and Administrative Rule at the time of the offense are ORS 144.125 (1981), and OAR 255-60-005 (1982) which arose before the creation of ORS 144.125(3)(a) (2009), ORS 144.280(1)(a) (2009), and OAR 255-062 (2010).

Prior to the implementations of ORS 144.125 (2009), ORS 144.280 (2009), and OAR 255-062 (2010) plaintiff was able to be released prior to two years.

The construction of OAR 255-60-005(4) (1982) is such that prior to the implementations of ORS 144.125 (2009), ORS 144.280 (2009), and OAR 255-062 (2010) plaintiff was able to be released prior to two years.

This newly mandated minimum period which plaintiff now has to wait is in violation of the Federal *ex post facto* analysis.

The United States Supreme court has held that "The Constitution forbids the passage of ex post facto laws, a category that includes '[e]very law that changes the punishment, and inflicts

Page 7 of 16 - MEMORANDUM IN SUPPORT OF CIVIL RIGHTS COMPLAINT

a greater punishment, than the law annexed to the crime, when committed'." *Peugh v. United States*, 133 S.Ct. 2072, 186 L.Ed.2d 84, 81 USLW 4372 (2013) (citing *Calder v. Bull*, 3 U.S. 386, Dall. 386, 390, 1 L.Ed. 648 (1798) (emphasis deleted).

Furthermore, under the *Ex-post facto* clause of Fourteenth Amendment of the United States Constitution plaintiff has a right to be free from Administrative Rules and /or Statutes which changes the punishment and inflicts a greater punishment, than the Administrative Rules and /or Statutes annexed to the crime, when committed. A change in Oregon's parole regulations created a substantial — rather than attenuated or speculative — risk of increasing a prisoner's incarceration, and therefore violated the *Ex Post Facto* Clause. *Himes v. Thompson*, 336 F.3d 848, 856 (9th Cir. 2003).

Oregon's Board of Parole "through its rules governing release dates" affects "the amount of freedom or punishment that a prisoner in fact receives." *Williams v. Bd. of Parole,* 98 Or.App. 716, 780 P.2d 793, 795 (1989) (citation omitted). So recognizing, Oregon courts have held that Oregon Board of Parole regulations are properly subject to *ex post facto* analysis, *see id.,* as have we, *see Flemming v. Bd. of Parole,* 998 F.2d 721, 725–27 (9th Cir.1993). *Himes v. Thompson*, 336 F.3d 848 (9th Cir. 2003)

What's more, because of the *ex-post facto* nature of ORS 144.125(3)(a) (2009), ORS 144.280(1)(a) (2009), and OAR 255-062 (2010), any application of OAR 255-062-0016 (2010) and its adverse effect upon plaintiff could be construed as the "fruit of the poisonous tree" concept and because of such cannot be applied to plaintiff.

## CLAIM 4

255-062-0006(1) (2010):

> After the Board denies a petition for change in terms of
> confinement of an inmate convicted of aggravated murder or

murder, **the Board may not hold a subsequent hearing that is less than two years**, ***."

(emphasis added)

This newly mandated minimum period which plaintiff now has to wait is in violation of the Federal *ex post facto* analysis.

The United States Supreme court has held that "The Constitution forbids the passage of ex post facto laws, a category that includes '[e]very law that changes the punishment, and inflicts a greater punishment, than the law annexed to the crime, when committed'." *Peugh v. United States*, 133 S.Ct. 2072, 186 L.Ed.2d 84, 81 USLW 4372 (2013) (citing *Calder v. Bull*, 3 U.S. 386, Dall. 386, 390, 1 L.Ed. 648 (1798) (emphasis deleted).

Under the *Ex-post facto* clause of Fourteenth Amendment of the United States Constitution plaintiff has a right to be free from Administrative Rules and /or Statutes which changes the punishment and inflicts a greater punishment, than the Administrative Rules and /or Statutes annexed to the crime, when committed. A change in Oregon's parole regulations created a substantial — rather than attenuated or speculative — risk of increasing a prisoner's incarceration, and therefore violated the Ex Post Facto Clause. *Himes v. Thompson*, 336 F.3d 848, 856 (9th Cir. 2003).

Oregon's Board of Parole "through its rules governing release dates" affects "the amount of freedom or punishment that a prisoner in fact receives." *Williams v. Bd. of Parole,* 98 Or.App. 716, 780 P.2d 793, 795 (1989) (citation omitted). So recognizing, Oregon courts have held that Oregon Board of Parole regulations are properly subject to ex post facto analysis, *see id.,* as have we, *see Flemming v. Bd. of Parole,* 998 F.2d 721, 725–27 (9th Cir.1993). *Himes v. Thompson*, 336 F.3d 848 (9th Cir. 2003)

Furthermore, because of the *ex-post facto* nature of ORS 144.125(3)(a) (2009), ORS 144.280(1)(a) (2009), and OAR 255-062 (2010), any application of OAR 255-062-0016 (2010)

and its adverse effect upon plaintiff could be construed as "fruit of the poisonous tree" concept and because of such cannot be applied to plaintiff.

## CLAIM 5

**I.**     There are only two types of hearings which governs the parole-consideration process: ORS 144.228 "Periodic parole consideration hearings for dangerous offenders", and ORS 144.120 "Initial parole hearing; setting initial parole release date; deferral of setting initial date".

ORS 144.223[7] was written for the sole purpose, and limited to those prisoners whom have not been given a prison term and are being considered for parole.

The court in *Contreras v. Bd. of Parole & Post-Prison Supervision*, 297 Or.App. 469, 471, 443 P.3d 636 (Or. App. 2019), made the finding that there is a differentiation between an inmate's projected parole release date and a parole consideration date.

In *Hamel v. Johnson,* 330 Ore. 180, 185, 998 P2d 661 (2000) the court described the state of Oregon's parole process (matrix system) "a trial court imposed an indeterminate sentence of a specified duration on a defendant who had been convicted of a crime. An indeterminate sentence stated only a maximum term to be served under the jurisdiction of the Department of Corrections. Such a sentence did not establish the length of time that a defendant was to be incarcerated. *Harris v. Board of Parole*, 288 Ore. 495, 503, 605 P.2d 1181 (1980). Regardless of the length of an indeterminate sentence, under ORS 144.780 and ORS 144.785, "it is the [Board] that determines the actual duration of imprisonment." Id. In other words, for prisoners sentenced under the matrix system, the Board, not the court, determines the actual duration of

---

[7]  144.223 Examination by psychiatrist or psychologist of parole candidate; report; copies to affected persons.

(1) The State Board of Parole and Post-Prison Supervision may require any prisoner being considered for parole to be examined by a psychiatrist or psychologist before being released on parole.

imprisonment. *Price v. Board of Parole*, 300 Ore. 283, 288, 709 P.2d 1075 (1985). See also OAR 213-002-0001(3)(b)".

As of October 1, 1986, plaintiff no longer falls within the parole consideration process: The Board on October 1, 1986, to consider plaintiff for parole, did conduct a prison term hearing under ORS 144.120[8]. At this hearing, because plaintiff was being considered for parole, the board did have the authority to utilize ORS144.223 to obtain a psychological evaluation. The Board's conclusion resulted in the Board Acton Form dated October 15, 1986, in which the Board did establish a parole release date of 12/29/2000.

When the board establishes a release date under ORS 144.120 the prisoner would automatically be released on to parole. See ORS 144.245[9].

The hearing which now governs plaintiff is ORS144.125. Under ORS 144.125 the board has the authority to utilize its discretion to initiate a hearing:

> "(1) Prior to the scheduled release of any prisoner on parole and prior to release rescheduled under this section, **the State Board of Parole and Post-Prison Supervision may upon request of the Department of Corrections or on its own initiative** interview the prisoner to review the prisoner's parole plan and psychiatric or psychological report, if any, and the record of the prisoner's conduct during confinement." **(emphasis added).**

Because of the discretionary use / nature of ORS 144.125 the Exit Interview Hearing cannot be viewed as a consideration hearing.

---

[8]  144.120 Initial parole hearing; setting initial parole release date; deferral of setting initial date.
(1) (a) "... For those prisoners sentenced to a term of imprisonment for life or for 15 years or more, the board shall conduct the parole hearing, and shall set the initial release date, within one year following admission of the prisoner to the institution."

[9] 144.245. Date of release on parole; effect of release order
"(1) When the State Board of Parole and Post-Prison Supervision has set a date on which a prisoner is to be released upon parole, the prisoner shall be released on that date ..."

Furthermore, the statutory construction of ORS 144.125 further indicates that the Exit Interview Hearing is solely to determine if a reason can be found not to release the prisoner onto parole. This language is distinctive from language of a parole consideration hearing to see if a prisoner has shown that parole should granted.

For the board to postpone a prisoner's release date it must utilize its discretionary authority under ORS 144.125. *State v. Dinkel*, 34 Or.App. 375, 383, 579 P.2d 245 (1978).

**II.**    The Board under the authority of ORS 144.125 and OAR 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 (1981), did on 3/8/98, conducted an Exit Interview Hearing, where the Board for the first-time deferred Plaintiff's release 24 months[10].

Once the Board utilized OAR 255-60-005(4), the Board lost their ability under ORS 144.223 or by any other statute or rule to obtain any further psychiatric or psychological report(s)/evaluation(s) and must perform their duties under OAR 255-60-005(4)(c)[11].

**III.**    The Board's authority to obtain a psychiatric or psychological report, if any for the hearing prior to Plaintiff's release on to parole is found within ORS 144.125(1) (1981):

"(1) Prior to the scheduled release of any prisoner on parole and prior to release rescheduled under this section, the State Board of Parole and Post-Prison Supervision may upon request of the Department of Corrections or on its own initiative interview the prisoner to review the

---

[10]    OAR 255–60–005(4) (1982), which provided in relevant part:
If the record indicates that a psychiatric or psychological condition of severe emotional disturbance, such as to constitute a danger to the health or safety of the community, is present, the Board may order the postponement of the scheduled parole release until a specified future date ***.

[11]    OAR 255-60-005(4)(c) states:
The Board may not deny release on parole solely because of a prisoner's severe emotional disturbance. Should the prisoner be diagnosed as a danger to himself or others or unable to provide for the basic personal needs necessary for his health or safety, the Board may initiate the civil commitment procedure as provided in ORS Chapter 426."

prisoner's parole plan and psychiatric or psychological report, if any, and the record of the prisoner's conduct during confinement. **To accommodate such review by the board, the Department of Corrections shall provide to the board any psychiatric or psychological reports held by the department regarding the prisoner**. \*\*\*\*\*" (**emphasis added**)

The statute must be read as the legislature intended.

When ORS 144.125(1) (1981) is read, the language is clear, the board must rely upon the mandated responsibility of the Department of Corrections to provide to the board any psychiatric or psychological reports held by the department regarding the prisoner.

Therefore, because of the mandatory language, the Board does not have the authority to remove itself from the scope of the controlling statutory language of ORS 144.125(1) (1981) and import an external statutory authority (ORS 144.223) into the exclusive domain of the Exit Interview Hearing.

## CLAIM 6

OAR 255-062-0021 provides, in part:

The inmate bears the burden of producing evidence sufficient to convince the Board that an interim hearing is warranted.

On October 1, 1986, pursuant to ORS 144.120, the Board did conduct a prison term hearing in which the Board voted to grant Plaintiff a "firm" release date on December 29, 2000. When the board established plaintiff's release date plaintiff became part of a suspect class entitling him to equal protection under the United States Constitution.

The board violated the Equal Protection Clause of the Fourteenth Amendment to United States Constitution when it applied rules that did not treat plaintiff as other "similarly situated" prisoners. Specifically, applying OAR 255-062-0021 to plaintiff.

The Equal Protection Clause of the 14th Amendment of the United States Constitution,

Page 13 of 16 - MEMORANDUM IN SUPPORT OF CIVIL RIGHTS COMPLAINT

commands that no state shall deny to any person within its jurisdiction the equal protection of the laws, which is essentially a direction that all persons similarly situated should be treated a like.

The Equal Protection Clause forbids inequalities of privileges or immunities not available 'upon the same terms'/ first to any citizens. It may be invoked by an individual who deems equality of treatment with other individuals as well as by one who demands equal privileges or immunities for a class to which he or she belongs. The Board is applying rules to me now that weren't in effect at the time of my crime and violating my rights under the Constitution of the United States of America: due process of law; cruel and unusual punishment; equal protection of the law, enumeration rights.

In violation the equal protection clause of the Fourteenth Amendment to the United States Constitution, the board erred by placing an undo financial burden upon indigent plaintiff.

Plaintiff has a liberty interest in release on to parole that is protected by the Due Process Clause of the 14th Amendment of the United States Constitution. *Board of pardons v. Allen,* 482 U.S. 378, 107 S Ct. 2415, 96 L Ed 2d 303 (1987); *see Greenholtz v. Nebraska Penal Inmates*, 442 U.S. 1, 11-12, 60 L. Ed. 2d 668, 99 S. Ct. 2100 (1979) (holding that state parole statutes phrased in mandatory terms create a liberty interest in a parole release date).

And because of this liberty interest, the Board is obligated to conduct hearings. *Miller v. Or. Bd. of Parole*, 642 F.3d 711,716 (9th Cir., 2011). (citing *Swarthout v. Cooke*, 562 U.S.216, 220, 131 S.Ct. 859, 178 L.Ed.2d 732 (2011).

The board's application of OAR 255-062, and /or ORS 144.125(3) (2009), and /or ORS 144.280 (2009) prohibited indigent plaintiff equal protection of privileges or immunities. under Article 1, section 20 of the Oregon Constitution. In *State v. Clark*, 291 Ore 231, 237, 630 P. 2d 810 (1981) "Article 1, section 20, forbids inequality of privileges or immunities not available 'upon the same terms', first to any citizen, and second, to any class of citizens.  In other words, it

Page 14 of 16 - MEMORANDUM IN SUPPORT OF CIVIL RIGHTS COMPLAINT

may be invoked by an individual who demands equality of treatment with other individuals as well as by one who demands equal privileges or immunities for a class to which he or she belongs".

Central to Federal Constitution's guarantee of equal protection is the principle that government and each of its parts remain open on impartial terms to all who seek the government's assistance; 'Equal Protection of the laws is not achieved through indiscriminate imposition of inequalities'. *Sweatt v. Painter*, 339 US 629, 635, 94 LED 1114, 70 S Ct. 848 (1950); a law declaring that in general it shall be more difficult for one group of citizens than for all others to seek aid from the government is itself a denial of equal protection of the law in the more literal sense; the guaranty of equal protection of laws is a pledge of the protection of equal laws.

In *Douglas v. California*, 372 US 353, 357, 9 L ED 2d 811, 83 S ct. 814 "the rich man can require the court to listen to argument of counsel before deciding on the merits, but a poor man cannot.".

The board has put the burden upon plaintiff as laid out in OAR 255-062-0021(1) "The inmate bears the burden of producing evidence sufficient to convince the Board that an interim hearing is warranted.".

Plaintiff can, at no cost request an interim hearing, but because plaintiff is indigent he is not able to produce the evidence required by statute and/or rule to have the hearing, where as a prisoner whom is not indigent is capable to procure the required evidence.

So therefore, the equal protection clause forbids inequality of privileges or immunities not available "upon the same terms," first, to any citizen (plaintiff), and second, to any class of citizens (plaintiff) whom cannot enjoin in the same privileges because of his class (plaintiff).

## "EQUITABLE TOLLING"

In this case, Plaintiff brings this cause of action under 42 U.S.C. § 1983. For civil rights suits filed in Oregon under § 1983, the statute of limitations is two years. *See* Or. Rev. Stat. § 12.110; *Sain v. City of Bend,* 309 F.3d 1134, 1139 (9th Cir. 2002).

The running of the statute is equitably tolled while exhausting Administrative and State remedies. See, e.g., *Irwin v. Veterans Administration*, 498 U.S. 89, 111 S.Ct. 453, 457-58 (1990); *Ervin v. County of Los Angeles*, 848 F.2d 1018, 1019 (9th Cir.1988), cert. denied, 489 U.S. 1014 (1989); *Addison v. State*, 146 Cal.Rptr. 224, 226 (Cal.1978), *Azer v. Connell*, 306 F.3d 930 (9th Cir. 2002)

Where the danger of prejudice to the defendant is absent, and the interests of justice so require, equitable tolling of the limitations period may be appropriate. *See Stoll v. Runyon,* 165 F.3d 1238, 1242 (9th Cir.1999).

Dated this _____ day of_____, 2023.

Respectfully Submitted,

_____
SCOTT FREI

## CERTIFICATE OF FILING AND SERVICE

I, Scott Frei, certify that on: _October 26, 2023_ , this:

1. 42 U.S.C. § 1983 Civil Rights Complaint,
2. Memorandum In Support of Civil Rights Complaint,
3. _Application to Proceed in forma Pauperis_

was E-Filed to the Court (Per SRCI Standing Order No. 2019-9.

### AND

I, Scott Frei, certify that on _October 26, 2023_ , I served the forgoing:

1) 42 U.S.C. § 1983 Civil Rights Complaint
2) Memorandum In Support of Civil Rights Complaint,
3) _Application to proceed In forma Pauperis_

upon the parties hereto listed by method indicated below:

Ellen F. Rosenblum #75323
Attorney General
1162 COURT STR. NE.
SALEM, OR. 97301-4096
Of Attorneys for Defendant's

**X  E-SERVED PURSUANT TO**
**SRCI STANDING ORDER NO. 2019-9**


Scott Frei, Plaintiff, *pro se'*
SID#6180687
Snake River Correctional Institution
777 Stanton Blvd.
Ontario, OR. 97914